UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEJUAN BANKHEAD, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:17-cv-2441-SNLJ |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Dejuan Bankhead's applications for disability insurance benefits and supplemental security income benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Bankhead now seeks judicial review. The Commissioner opposes the motion. The issues being fully briefed, and for the reasons set forth, this Court will **AFFIRM** the Commissioner's decision.

**I.    Procedural History**

Bankhead's application was denied at the initial determination level.  He then appeared before an Administrative Law Judge ("ALJ").  The ALJ found Bankhead is not disabled because his symptoms were not supported by the medical evidence available. Bankhead then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration.  The Appeals Council denied review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§

1

404.981, 416.1481.  Bankhead now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

## II.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental

ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant

3

is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.   The ALJ's Decision

At Step One, the ALJ found Bankhead met the insured status requirements through June 30, 2015, and had not engaged in substantial gainful activity since November 15, 2012. (Tr. 12). At Step Two, the ALJ found Bankhead suffers from five

4

medically determinable impairments: (1) major depressive disorder; (2) post-traumatic stress disorder; (3) obsessive-compulsive disorder; (4) obesity; and (5) chronic low back pain presumably attributed to 'minimal' thoracic scoliosis. (Tr. 13).[1] At Step Three, the ALJ concluded Bankhead does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 14).

Next, in beginning the analysis of Step Four, the ALJ determined Bankhead's RFC.[2] The ALJ found that Bankhead

> has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except that he is limited to performing simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements. He is capable of simple, work-related decisions and can tolerate routine work place changes. He can perform work responsibilities that do not require public interaction and that involve only occasional interaction with co-workers and supervisors.

(Tr. 18). As part of this determination, the ALJ found Bankhead's allegations about his intellectual symptoms' intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 19). The ALJ noted a work history that "is not entirely demonstrative of a strong employment motivation" and highlighted a variety of daily activities that appeared inconsistent with a total intellectual disability. For example, it was highlighted that Bankhead taught his

---

[1] Bankhead makes no arguments before this Court related to his physical impairments, but instead focuses purely on the alleged disabling effects of his mental impairments.

[2] In the past, there has been some confusion as to when the RFC is determined, which affects who holds the burden of proof in establishing an appropriate RFC. In this Circuit, it has been held that "the RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (*quoting Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000)).

girlfriend how to drive, provides childcare to his girlfriend's children, manages his own finances, spends time playing his PlayStation gaming console, works various odd jobs, restored his grandparent's house, and even "performed an engine swap" on a friend's Chevy Impala. (Tr. 19). Medical records, meanwhile, suggested a "strong psychosomatic component as [Bankhead's] symptoms change every time they are discussed" and indicated, on several occasions, a total alleviation of depression and anxiety symptoms—such as when Bankhead purchased his PlayStation and was able to play games "whenever he felt down." (Tr. 21). The ALJ concluded that "[o]verall, the claimant failed to exhibit significant mood abnormalities and failed to exhibit significant deficits in terms of cognitive functioning, memory, or concentration, all of which are inconsistent with the severity of ongoing symptoms described [by] claimant[.]" (Tr. 22).

With an RFC determination in hand, the ALJ continued on through Step Four to determine whether Bankhead can perform his past relevant work given his designated RFC. The ALJ determined Bankhead cannot perform any past relevant work. (Tr. 25). At Step Five, the ALJ analyzed whether Bankhead can successfully adjust to other work. The ALJ noted that if Bankhead had the RFC to perform the full range of medium work—in other words, if Bankhead's RFC matched perfectly with the medium work Medical-Vocational Guidelines (the "Grids")—then the Grids would direct a finding of not disabled; but, additional limitations impede Bankhead's ability to perform all or substantially all of the medium work requirements. Thus, the ALJ relied on vocational expert (VE) testimony to determine the extent to which these limitations erode Bankhead's occupational base to perform medium work. The VE testified Bankhead is

6

able to perform work as a dishwasher, cleaner, and hand packer even after considering all of the limitations in Bankhead's RFC. (Tr. 26). The ALJ then found these jobs exist in significant numbers in the national economy and concluded Bankhead is not disabled. (Tr. 26).

**IV.    Standard of Review**

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

V.   **Discussion**

Bankhead alleges the ALJ erred in three respects. First, Bankhead argues the ALJ failed to properly consider whether he was disabled pursuant to Listing 12.05 in that the ALJ disregarded a valid IQ test from 1996 that fell within the listing guidelines. Second, Bankhead argues his designated RFC is not supported by "some medical evidence" as is "required under the standards" contained in *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000) and *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Specifically, Bankhead asserts both that the ALJ "offer[ed] absolutely no rationale relative to why great weight was given to [Dr. Karen Hampton,] a one-time consultative evaluator" and that there was no medical evidence tending to show he could work a full-time schedule. Third, Bankhead argues the hypothetical question posed to the vocational expert "fail[s] to capture the concrete consequences of [his] impairments."

   A. **Listing 12.05 and Bankhead's Qualifying IQ Score**

In arguing the ALJ misapplied Listing 12.05, Bankhead asserts the "listings indicate[] the lowest IQ score [is] to be utilized in evaluat[ing] whether [Bankhead] met the listing of impairments." The lowest IQ score occurred in 1996, when testing revealed Bankhead had a verbal IQ score of 66, a performance IQ score of 80, and a full scale IQ score of 71. (Tr. 526). A prior IQ test from 1993 resulted in higher scores: a verbal IQ score of 78, a performance IQ score of 87, and a full scale IQ score of 81. (Id.). The most

recent IQ test from 2016 resulted in a verbal IQ score of 80 and a full scale IQ score of 79. (Tr. 712).[3]

Bankhead focuses on his 1996 IQ test because one of the requirements of Listing 12.05 is that he suffer from a certain severity of "subaverage general intellectual functioning," which essentially mandates, among other things, that Bankhead have a qualifying score below 70. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Though the severity requirement can be established in one of four ways under the various paragraphs of Listing 12.05, Bankhead appears to rely only on the "paragraph C criteria"—it is not altogether clear from his briefing, as he makes no arguments addressing the nuanced parameters of the other paragraphs. Paragraph C requires "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. at § 12.05(C). The only score that would fit this description is Bankhead's verbal IQ score of 66 from his 1996 test. Thus, Bankhead argues the ALJ erred at Step Three when failing to account for this particular score in the decision.

The flaw in Bankhead's argument is that Listing 12.05 does not simply adopt whatever lowest score can be found in a long history of IQ tests. Rather, in addressing how IQ tests will be utilized, the regulations state that

---

[3] Bankhead also achieved a "perceptional reasoning" score of 88, a "working memory" score of 77, and a "processing speed" score of 86. These appear to be cognate factors of the more generalized "performance" IQ score used in the 1993 and 1996 tests, which derive from a previous version of the Wechsler Adult Intelligence Scale—WAIS-III, with the newer version being WAIS-IV.

> [I]n cases where more than one IQ is customarily derived from the test administered, *e.g., where verbal, performance, and full scale IQs are provided* in the Wechsler series, *we use the lowest of these* in conjunction with 12.05.

*Id.* at § 12.00(D)(6)(c) (emphasis added).

Thus, the regulations do not mandate that an ALJ pick the lowest-ever IQ score recorded. Rather, the ALJ is to pick the lowest recorded IQ score amongst the various scores used in a single test (WAIS-III, for example, used "verbal," "performance," and "full scale") as the baseline for applying the four severity criteria paragraphs of Listing 12.05. *See Miles v. Barnhart*, 374 F.3d 694, 700 (8th Cir. 2004) ("[T]he regulations provide that in cases where more than one score is derived from a valid IQ test, an ALJ must choose the lowest score[.]"); *see also Brown v. Astrue*, 2013 WL 99174 at *3 (N.D. Iowa Jan. 8, 2013). Separate from the situation of choosing a particular IQ score amongst many generated in a single test, the Eighth Circuit has been clear that "the regulations do not address" the situation of choosing a controlling IQ score "when multiple tests have been given." *Miles*, 374 F.3d at 700.

Finding no support in the regulations, then, Bankhead turns next to *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001)[4] in asserting a person's IQ is presumed to remain stable over time and that the ALJ, therefore, had a responsibility to explain why he discounted Bankhead's earlier qualifying verbal IQ score of 66. But, *Muncy* involved

---

[4] Bankhead also cites to a number of opinions from other circuits. However, this Court is bound only by the precedent of the Eighth Circuit and, in any event, Bankhead's string citation of case law from other circuits is the very same string citations set forth in *Muncy*. Accordingly, the Court limits its focus to the applicability of *Muncy* alone, which necessarily encompasses the viewpoints of the other circuits to the extent the Eighth Circuit found them persuasive.

10

a different situation than is present here. That case involved two IQ scores, from two tests, that differed by more than 25 points—a 42% increase in intellectual functioning within six years—and the Eighth Circuit was narrowly critical of the ALJ's failure to rationally address why the claimant's first score was disregarded (the ALJ summarily chalked it up to "medical improvement") in light of such an unusually large discrepancy. *Id*. at 734-735.

More apropos to the situation here is *Phillips v. Colvin*, 721 F.3d 623 (8th Cir. 2013), which later distinguished *Muncy*. In *Phillips*, the largest discrepancy in scores was 12 points (similar to the situation in this case) and "unlike Muncy[,] the ALJ did address the discrepancy" when finding the newer IQ test was "more accurate and consistent with [claimant's] daily activities." *Id*. at 627. The Eighth Circuit held the ALJ did not err in relying on reports about the claimant's daily functioning—reports that indicated claimant could cook, drive a car, engage in leisure activities with friends, perform household chores, shop for groceries, and take care of his own personal hygiene—which suggested "a change in [claimant's] intellectual functioning" inconsistent with earlier IQ scores. *Id*. at 628-629.

Similarly here, the ALJ rejected Bankhead's earlier IQ scores because "the record repeatedly reflects the claimant's ability to live independently, to help and to perform a wide range of daily activities" that better reflected "claimant's most recent consultative examination [that] generated a full scale IQ score of 79." (Tr. 15). The ALJ noted similar criteria as was relied upon in *Phillips*—the ability to drive, work, go to school, engage in leisure activities, assist with chores, take care of one's self, etc.—and concluded the

11

"longitudinal evidence" and "definitive absence of deficits in adaptive functioning" was enough reason to reject application of Listing 12.05. (Id.).

On the basis of the substantial evidence contrary to Bankhead's sole qualifying IQ score from 1996, evidence the ALJ is required to consider in evaluating the credibility of a particular IQ score, the Court holds the ALJ did not err in disregarding Bankhead's earlier score. *Miles*, 374 F.3d at 699; *see also Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998) ("[T]est results of this sort should be examined to assure consistency with daily activities and behavior.") (internal quotations and citations omitted).

**B. The Adequacy of the ALJ's Weight Assignment to Consultant Hampton and the ALJ's Findings on Bankhead's Ability to Engage in Full-Time Employment**

Regarding Bankhead's second argument, this Court has previously explained that *Singh* and *Lauer* require, in essence, that the ALJ "draw from the medical records as a whole in formulating an RFC; however, it is the ALJ who determines the appropriate weight and credibility given to the medical records in total—records that are often conflicting as between providers or by a single provider over multiple visits." *Chandler v. Berryhill*, 2018 WL 5786267 at *4 (E.D. Mo. Nov. 5, 2018). Bankhead appears to believe that, in determining the appropriate weight to give to a particular medical source, an ALJ must always set forth the rationale for the weight ultimately assigned. Yet, no such burden is imposed upon an ALJ. To the contrary, the only time an ALJ must "give good reasons … for the weight [he or she] give[s]" is in conjunction with considering the medical opinions of a "treating source"—i.e. someone "who provides [a claimant], or has provided [a claimant], with medical treatment or evaluation and who has, or has had, an

ongoing treatment relationship with [claimant]." *See* 20 C.F.R. §§ 404.1527(a)(2), 404.1527(c)(2); *see also* 20 C.F.R. §§ 416.927(a)(2), (c)(2) . Otherwise, in considering the opinions of a non-treating source, such as a "psychological consultant," the ALJ need only "explain in the decision the weight given to the opinions of … [the] psychological consultant." 20 C.F.R. § 404.1527(e)(2)(ii) (2012); *see also* 20 C.F.R. § 416.927(e)(2)(ii)(2012).[5]

There is a marked difference between the requirement of giving "good reasons" for the weight assigned to treating sources and merely "explaining the weight given" to non-treating sources—a difference overlooked in Bankhead's argument. Indeed, this Court has recently explained that, in the case of non-treating sources, simply assigning a particular weight, without further comment, is enough to satisfy the requirements of Section 404.1527. *See Bennett v. Berryhill*, 2018 WL 4593503 at *6 (E.D. Mo. Sept. 25, 2018) (rejecting claimant's argument that remand was required because ALJ did not "adequately explain the weight she assigned" to a non-treating source where record showed the ALJ, in fact, assigned "partial weight" to the source). In respecting the express language of Section 404.1527 (and Section 416.927), the Court holds the ALJ did

---

[5] Section 404.1527, which has itself undergone a number of revisions over the years, has been outright superseded by Section 404.1520c for all claims filed after March 27, 2017. The new rule states "we will not … give any specific evidentiary weight … to any medical opinion(s) … including those from your medical sources," indicating a complete abandonment of the assigned-weight regime in favor of a new persuasiveness-of-the-evidence regime articulated in Section 404.1520c(b). *Compare* 20 C.F.R. § 404.1527 (2017); *with* 20 C.F.R. § 404.1520c(b) (2017). In any event, the Court considers only the language of Section 404.1527 as it appeared at the time relevant to Bankhead's claims. Even in doing so, however, the Court notes no version of Section 404.1527 ever required a specific rationale to be given for the weight assigned to a non-treating source.

not err by merely assigning a particular weight ("great weight") to the opinions of consultant Hampton without providing further reasoning.

As for Bankhead's second criticism under *Singh* and *Lauer*, that the ALJ failed to account for his inability to work a rigorous, full-time scedule (what Bankhead assumes is "substantial gainful activity" under the regulations), the standard to be applied is whether there is substantial evidence in the record to draw such a conclusion. *See McKinney v. Apfel*, 228 F.3d 860, 863-864 (8th Cir. 2000). The Court has little trouble finding the record does, in fact, contain substantial evidence to support the ALJ's conclusion that Bankhead can work full time. And, in any event, "substantial gainful activity" does not absolutely require full-time employment as Bankhead suggests. *See* 20 C.F.R. §§ 404, 1505(a) (defining "disability" as the "inability to do any substantial gainful activity"), 404.1572(a) (noting "[y]our work may be substantial even if it is done on a part-time basis"); *see also* 20 C.F.R. §§ 416.905(a), 416.972(a).

For his part, Bankhead does not point to a particular exertional limitation attributable to his mental impairments; instead he seems to point to his 1996 IQ test and the nebulous totality of his "treatment records." But, Bankhead provides no medical justification or case law to explain why a below-average IQ, in itself, would constitute substantial evidence of his inability to work full time. And this Court has found no particular treatment record (or sets of records) that would substantially demonstrate Bankhead incapacity for full-time employment.

To the contrary, the record indicates—as Bankhead acknowledges himself—that he has the exertional capacity to complete a two-year vocational program in automotive

technology, attend mechanic's school, perform an "engine swap" on a Chevy Impala, work at a fast-food restaurant, remodel his grandparent's house, provide childcare, and even "mak[e] a business plan with [the] intent to start a mechanic shop." He also plays video games, performs light housework, travels out of town with friends, goes "to the club," and works a number of "odd jobs" (sometimes in other states). Bankhead references disabling depression, anxiety, and PTSD-like symptoms, but the record suggests they are highly situational—based upon relationship problems and legal difficulties—and that medication has been quite successful in alleviating symptoms, which weighs against finding in favor of disability. *See Medhaug v. Astrue*, 578 F.3d 805 ("An impairment which can be controlled by treatment or medication is not considered disabling.").

That being said, this Court is also mindful of Bankhead's profoundly difficult history as reflected in the records, which is filled with sobering details of homelessness, physical and emotional abuse, frequent nightmares, and drug dependency that would be difficult for anyone to overcome. Even so, these challenges do not, in themselves, demonstrate a disability—though they may certainly contribute to the purported intensity of Bankhead's impairments. The record, ultimately, makes clear that Bankhead's depression and anxiety respond quite positively to medication, distractions such as video games, and a supportive girlfriend. Some records go so far as to suggest Bankhead's symptoms might be alleviated by discontinuing chronic, heavy marijuana use. Moreover, there is a notable discontinuation of mental health treatment after December 2015 (and

sporadic treatment between 2012 and 2015) that tends to suggest Bankhead's symptoms are, indeed, situational and effectively controlled with treatment and medication.

In sum, there is substantial evidence in the record to demonstrate an exertional capacity commensurate with full-time employment notwithstanding the challenges faced by Bankhead. It is not this Court's prerogative to substitute its own judgment for that of the ALJ where substantial evidence otherwise supports the ALJ's conclusions. *McNamara*, 590 F.3d at 610. Therefore, because substantial evidence supporting the ALJ is present here, the Court holds the ALJ did not err in concluding that Bankhead is capable of substantial gainful activity. *See McKinney*, 228 F.3d at 864 (substantial evidence supported ALJ's determination that claimant was capable of full-time employment where record provided contrary evidence that claimant did not, in fact, suffer from disabling fatigue).

### C. The Sufficiency of ALJ's Hypothetical Question to the Vocational Expert

Bankhead's final argument is that the ALJ erred when submitting a "hypothetical question to the vocational expert [that] failed to capture the concrete consequences of plaintiff's impairment." A hypothetical question is "properly formulated if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). Thus, so long as the ALJ's decision is supported by substantial evidence, he or she is free to include only those impairments and limitations that are deemed credible. *See Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). Consequently, Bankhead's third argument is a redundancy to his attacks on the evidentiary basis of the ALJ's RFC determination.

16

The Court notes Bankhead never actually explains how the hypothetical question "failed to capture the concrete consequences of plaintiff's impairment." But, it is assumed from his other arguments that he is focusing on the alleged inability to work full time or, else, his allegedly debilitating depression and anxiety symptoms. As was already explained, the ALJ had ample evidence to conclude neither of these allegations were credible. And it is the ALJ's function to make credibility determinations in light of competing evidence. *Guilliams*, 393 F.3d at 801; *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016). Without the benefit of an argument that actually explains *how* the hypothetical question was flawed, the Court will not second guess the ALJ's determinations nor invent arguments on Bankhead's behalf.

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint (#1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

So ordered this 14th day of January 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE